UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOCORRA LAMPLEY, | |
| Plaintiff, | No. 22 C 03761 |
| v. | Judge Thomas M. Durkin |
| CITY OF HARVEY, | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Tocorra Lampley, as administrator of the estate of Sinica Price, brought an action against the City of Harvey ("the City") alleging wrongful death and a violation of 42 U.S.C. § 1983 due to conduct by its police officers that allegedly led to Price's death. The City now files a motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 11. For the following reasons, that motion is denied.

### Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed

1

factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

On May 18, 2021, two young men confronted Price "near his home" in Harvey, Illinois, over his refusal to move his vehicle upon their request, telling him that they "ran" the "block." Pl. Am. Compl., R. 1-2 ¶ 6. The next day, they ran into Price while he was out with his minor son. *Id.* ¶ 7. They called his son a "bitch" and told Price that they had "switches on their guns," which is an apparent reference to illegal after-market switches that convert semiautomatic handguns to fully automatic machine guns. *Id.* Later that day, they again encountered Price and shot at him multiple times but missed. *Id.* ¶ 8. Price reported the incidents and described the offenders to the Harvey Police Department ("HPD"). *Id.* ¶ 9. Based on his description, the HPD were able to identify the offenders and apprehended them several hours later. *Id.* ¶¶ 10-11. The HPD drove the offenders to Price's home, called him, and asked him to come

outside. *Id.* ¶ 12. Price exited and was "stunned to learn" that the HPD brought the offenders to his home instead of arranging for a line-up at the police station or asking Price to identify them in a photo array. *Id.* ¶¶ 12, 13. In the offenders' presence, the officers asked Price to positively identify them. *Id.* According to the Amended Complaint, because of this "show up" procedure, the offenders learned where Price lived and that he was a cooperator with the HPD against them. *Id.* ¶ 14. Despite Price's positive identification of the offenders, the HPD released them from custody. *Id.* ¶¶ 16, 18. On June 6, 2021, the offenders returned to Price's home, where they shot and killed him. *Id.* ¶ 19. This was confirmed by shell casings which matched those from the prior shooting. *Id.* ¶ 20. The Amended Complaint does not allege whether the offenders were ever charged with Price's murder.

On June 30, 2022, Plaintiff filed this case in the Circuit Court of Cook County against the City, alleging wrongful death and a violation of 42 U.S.C. § 1983. *See* R. 1-1. The City removed it to this Court. *See* R. 1. The Amended Complaint principally alleges that bringing suspects accused of violent crime to a victim's home for identification is a "gross departure from generally accepted policing practices and evinces a deliberate indifference to the victim's safety," and "created a danger to Mr. Price that would not exist absent the HPD officers' conduct." *Id.* ¶¶ 15, 17. The City filed the instant motion to dismiss each count in the Amended Complaint. R. 11.

## DISCUSSION

### I. Wrongful Death Claim

Count I is a wrongful death claim based on the HPD's allegedly willful and wanton conduct in "transport[ing] violent offenders to Mr. Price's home without his permission," "violat[ing] generally-accepted police practices," and "revealing to violent offenders the home address of the victim and that the victim was cooperating with the police." *Id.* ¶ 26. As to this claim, the City argues that it is immune from liability under the Illinois Tort Immunity Act, 745 ILCS 10/1-101 *et seq.* ("the Act"). It alternatively contends that it cannot have acted willfully or wantonly because a show up is a generally accepted police practice and because the City was not executing or enforcing any law at the time of Price's death. The Court addresses each argument in turn.

### A. Illinois Tort Immunity Act

Under Section 2-202 of the Act, public entities in Illinois are immune from liability with the exception of "willful and wanton conduct" arising out of executing or enforcing the law. 745 ILCS 10/2-202. But state actors enjoy absolute immunity pursuant to Section 4-102 of the Act for failing to:

> provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals.

745 ILCS 10/4-102. Similarly, § 4-107 of the Act completely immunizes public entities from claims related to "injur[ies] caused by the failure to make an arrest or by releasing a person from custody." 745 ILCS 10/4-107. The absolute immunity

4

conferred by §§ 4-102 and 107 is unaffected by § 2-202 because these sections do not explicitly contain an exception for willful and wanton conduct. *DeSmet v. Cnty. of Rock Island*, 219 Ill. 2d 497, 515 (2006).

Illinois courts have "applied section 4-102 to immunize police officers from civil suit where they are performing some function other than traditional law enforcement." *Agwomoh v. Vill. of Dolton*, 2022 IL App (1st) 210892, ¶ 56. The Illinois Supreme Court has thus outlined the confines of § 4-102 immunity to include "weapons detection, traffic control, and crowd security and control." *Doe v. Chicago Bd. of Educ.*, 213 Ill. 2d 19, 26 (2004); *see also Regalado v. City of Chicago*, 40 F. Supp. 2d 1009, 1017 (N.D. Ill. 1999). But where a claim involves officers "responding to a call that a crime may have just been committed, or . . . investigating a crime . . . , making an arrest or issuing a citation, or quelling a public breach of peace," § 4-102's blanket immunity does not apply. *Love v. City of Chicago*, 363 F. Supp. 3d 867, 874 (N.D. Ill. 2019) (quoting *Est. of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *4-5 (N.D. Ill. Sept. 2, 2015)). Put simply, "[s]ection 4–102 immunity may apply in the context where police officers are simply 'providing [or failing to provide] police services,' but section 2–202 immunity requires more particular circumstances for its application, *i.e.*, an act or a course of conduct 'in the execution or enforcement' of law." *Aikens v. Morris*, 145 Ill. 2d 273, 282 (1991).[1]

---

[1] The City's case citation that contains an opposite standard, *Luber v. City of Highland Park*, 151 Ill. App. 3d 758 (1986) ("sections 4-102 and 4-107 of the Act pertain specifically to . . . enforcing the criminal law and making arrests"), was later overruled by the Illinois Supreme Court in *Doe v. Calumet City*, 161 Ill. 2d 374 (1994),

5

"Generally, the question of whether a police officer is executing and enforcing the law under section 2–202, rather than providing police protection or service under section 4–102, is a factual determination which must be made in light of the circumstances involved." *Payne v. City of Chicago*, 16 N.E.3d 110, 119 (Ill. App. Ct. 2014) (citing *Pouk v. Vill. of Romeoville*, 405 Ill. App. 3d 194, 197 (2010)). A court may decide this question as a matter of law only "when the facts alleged support only one conclusion." *Payne*, 16 N.E.3d at 119.

The City argues that it is totally immunized from liability under §§ 4-102 and 107 of the Act. Plaintiff, however, asserts that her allegations are not encompassed by those provisions. According to the Amended Complaint, the HPD responded to a crime—the shots fired at Price by two young men. The HPD then acted to execute and enforce the law by arresting the offenders based on Price's description of them. While conducting its investigation of the crime, the HPD took the acts which are the subject of Plaintiff's allegations, namely, transporting the offenders to Price's home for an in-person show up. Taking the facts as alleged, the HPD's conduct was associated with "responding to a call that a crime may have just been committed, . . . investigating a crime . . . , [and] making an arrest," or in other words, the enforcement of the law under § 2-202, and not the failure to provide adequate police protection services under § 4-102. *Love*, 363 F. Supp. 3d at 874.

---

which itself was later overruled in *Ries v. City of Chicago*, 242 Ill. 2d 205 (2011). It also runs in direct contradiction to the Act's language.

Though the "police protection services" immunized under § 4-102 include crime prevention, *see Regalado*, 40 F. Supp. 2d at 1017, Plaintiff does not allege that the HPD was willful and wanton in failing to prevent Price's murder, failing to solve a crime, failing to offer police protection, or failing to arrest the offenders. Nor does she allege that the HPD wrongfully released the offenders from custody. Rather, the crux of her allegations is that the HPD was willful and wanton in its investigation of a crime by transporting violent criminals to Price's home for in-person identification, which informed them of his home address and that he was working with the police. Sections 4-102 and 107 thus do not grant absolute immunity to the City for the HPD's conduct. *McIntosh*, 2015 WL 5164080 (§ 2-202, and not § 4-102, applied to allegations relating to police officers' conduct in attempting to apprehend a criminal); *cf. Payne*, 16 N.E.2d at 124 (holding that § 4-102 immunized police where they were called to subdue a person experiencing a drug-induced psychosis episode, and not to execute the law or investigate a crime); *Turner v. City of Champaign*, 2019 WL 13241950, at *13-14 (C.D. Ill. Nov. 15, 2019) (same).

The City's case citations on this point are inapplicable. It principally cites to *Wisnasky v. CSX Transp. Inc.*, 2020 IL App (5th) 170418. In that case, the allegations concerned the police directing a vehicle to an unsafe railway crossing, which resulted in a train hitting the decedent's car. *Id.* Even though the court acknowledged there are no exceptions to § 4-102 immunity for affirmative acts, traffic control and roadway safety functions have long been understood to be immunized by both the common law and the Act. *Id.*; *Doe*, 213 Ill. 2d at 26; *Regalado*, 40 F. Supp. 2d at 1017. The same

7

cannot be said about actions taken to identify criminals during an active investigation, like those alleged here.

The City's discussion of *Prough* is similarly inapposite—there, the plaintiff attempted to avoid the application of § 4-107 immunity by alleging that the police acted wrongfully in failing to execute a detention order. *Prough v. Madison Cnty.*, 984 N.E.2d 1177, 1185 (Ill. App. Ct. 2013). The Illinois Appellate Court held that this was merely an attempt to repackage allegations that the police wrongfully released a criminal, which is clearly immunized by § 4-107. *Id.* But here, Plaintiff plainly admits that the HPD's decision to release the offenders is immunized. She does not base her allegations on that decision, nor does she try to repackage that allegation as something else. Rather, this case is about an allegedly wrongful show up procedure. The City's argument that the Illinois Tort Immunity Act immunizes it against Plaintiff's wrongful death claim must be rejected as a matter of law.

### B. Show-Up Procedure as Generally Accepted Police Practice

The City next argues that a show up procedure cannot be willful and wanton because it is approved by the Illinois Supreme Court as an acceptable police practice. In support, it cites *People v. Lippert*, 89 Ill. 2d 171, 188 (1982) and *People v. Ramos*, 339 Ill. App. 3d 891, 897 (2003). In both cases, the courts decided that transporting a criminal suspect to the scene of a crime for a show-up identification does not violate the *suspect*'s Fourth Amendment rights under certain circumstances. The issue here—whether bringing a suspect of a violent crime *to a victim's home* for identification is willful and wanton *toward the victim*—is completely different.

Plaintiff alleges that this specific show up procedure in Price's case was a deviation from accepted police practices. The City makes no argument to the contrary.

### C. Executing or Enforcing the Law at the Time of Price's Death

The City finally argues that it cannot be liable for willful and wanton acts taken while "executing or enforcing the law" because the offenders murdered Price nearly two weeks after the HPD's conduct at issue. 745 ILCS 10/2-202. Thus, the City alleges, Plaintiff does not have a claim because the HPD was not "executing or enforcing" any law at the time Price was killed.

It is a basic principle of causation that a defendant's wrongful act need not occur contemporaneously with an injury to lead to liability. What matters is that the wrongful act "is a substantial factor in bringing about the harm," even when that harm occurs later in time. Restatement (Second) of Torts § 431 (1965). Plaintiff here alleges that the City acted willfully and wantonly while enforcing and executing the law against violent offenders, and that, as a direct and proximate result, those same offenders later murdered Price at his home. R. 1-2 ¶ 27. The lapse of time between the HPD's actions and Price's death does not disqualify Plaintiff's claims.

Furthermore, the cases cited by the City were not dismissed because there was a gap in time between the state enforcing the law and the alleged injuries, as the City argues. On the contrary, the courts dismissed each case because the plaintiffs were attempting to hold state actors liable for some sort of failure to act in the first place. *See Lacey v. Vill. of Palatine*, 232 Ill. 2d 349, 365 (2009) (allegations of failure to protect from domestic violence not a claim under § 2-202); *Albert v. Bd. of Educ. of*

9

*City of Chicago*, 24 N.E.3d 28, 41 (Ill. App. Ct. 2014) ("Alleging a failure to act means section 2–202 is inapplicable."); *Green v. Chicago Bd. of Educ.*, 407 Ill. App. 3d 721, 728-29 (2011) ("The allegations in her complaint make clear that her contention is that the Board either failed to provide proper policing or failed to provide adequate policing."); *Jamison v. City of Chicago*, 48 Ill. App. 3d 567, 569 (1977) (failure to arrest immunized by § 4-102). As discussed above, the failure to provide police protection or prevent crime is plainly immunized under § 4-102. Plaintiff's wrongful death claim, then, survives the City's motion to dismiss.

## II.    Section 1983 Due Process State-Created Danger Claim

Count II alleges a violation of Price's due process rights in violation of 42 U.S.C. § 1983 under the "state created danger" doctrine. In general, the Due Process Clause "is a restraint upon governmental action" and does not create a duty to protect against injuries inflicted by private actors. *LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) ("The state does not have a due-process duty to protect against acts of private violence."). However, there are two limited exceptions to this rule: the "custodial" exception (whereby the government has a duty to protect a person in its custody) and, applicable here, the "state-created danger" exception. *See Doe v. Vill. of Arlington Heights*, 782 F.3d 11, 16-17 (7th Cir. 2015). Under the state-created danger doctrine, the Due Process Clause is implicated when "(1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct

10

in question 'shocks the conscience.'" *Est. of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019). The City argues that Plaintiff cannot establish any one of these elements.

### A. Created or Increased Danger

To adequately plead a state-created danger claim, Plaintiff must allege that "the state did something that turned a potential danger into an actual one," rather than "just standing by and d[oing] nothing to prevent private violence." *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 599–600 (7th Cir. 2008). In other words, the government must have taken an affirmative act that "place[d] the plaintiff in danger or increase[d] the danger the plaintiff already face[d]." *Spruill v. Bd. of Educ. of City of Chicago*, 544 F. Supp. 3d 839, 845 (N.D. Ill. 2021). Examples include: leaving children on the side of a dangerous highway late at night, *White v. Rochford*, 592 F.2d 381, 385 (7th Cir. 1979); inducing a drunk person to drive, *Reed v. Gardner*, 986 F.2d 1122, 1124 (7th Cir. 1993); or, similar to this case, revealing a police informant's identity to a criminal suspect who then goes on to kill the informant, *Monfils v. Taylor*, 165 F.3d 511, 520 (7th Cir. 1998).

The City argues that the danger to Price was already imminent before the HPD conducted the show-up, and that the HPD did not create or increase the danger. It is true that Price had already been confronted and shot at near his home, and the offenders may have eventually figured out where he lived and killed him without the HPD's intervention. But Plaintiff's allegation that Defendants' actions increased the danger to Price is plausible. Plaintiff alleges that although the offenders had already shot at Price, the HPD's actions informed them of where he lived and that he was

11

cooperating with police, information they did not previously know. If these allegations are true, as the Court must assume, a reasonable jury could find that the HPD's actions increased the danger that the offenders would want retribution and that any attempts to murder Price would be successful, thereby causing his death.

The City compares this case to *Fields v. Klegman*, a state-created danger case in which a witness to a murder received a trial subpoena to testify against the suspect. No. 21-CV-2058, 2022 WL 971529, at *1 (N.D. Ill. Mar. 31, 2022). The witness feared retaliation and requested police protection, but the prosecutor denied those requests despite knowing that the shooter had stated on a recorded jail call that he wanted to prevent a female witness from testifying. *Id.* at *2. Approximately three months after the witness testified, she was murdered. *Id.* The Court granted the state's motion to dismiss, reasoning that the government's knowledge of danger, followed by inaction, could not give rise to a claim. *Id.* at *7. The Court also held that the state did not create or increase a danger by serving the trial subpoena—it was already there when she became a witness to the murder. *Id.* And even if the government marginally increased the safety risk to the witness, as a matter of policy, the court did not want to hold a prosecutor liable for the routine act of issuing a trial subpoena, which is the only way to require a person to testify in court. *Id.* at *8.

Plaintiff here, conversely, does not allege that the City failed to act to protect Price or knew about a danger and did nothing. Plaintiff instead alleges that the City affirmatively increased the danger Price faced. The policy concerns in *Fields* are also inapplicable here. Unlike a trial subpoena, which is the only means to require a

12

witness's testimony, Plaintiff alleges the show up procedure was not a generally accepted practice and was not the only option available to the HPD. According to Plaintiff, the HPD could have just as easily conducted an anonymous line up or photo array at the station. A trier of fact may find that the HPD actually had no alternative actions available to it. But at the motion to dismiss stage, the Court must take the allegations in the Amended Complaint as true. And those allegations adequately allege that the HPD increased the risk to Price.

### B. Proximate Cause

Next, Plaintiff's Amended Complaint must allege facts suggesting that the City's conduct was the proximate cause of Mr. Price's death; that is, Mr. Price "must have been a foreseeable victim" of the City's acts. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009). Proximate cause "is a fact specific inquiry, involving a consideration of time, geography, range of potential victims, and the nature of harm that occurred." *Id.* at 829.

The City argues that this case is similar to other state-created danger cases involving victims of violent crime which courts have dismissed for lack of proximate cause. For example, in *Buchanan-Moore*, the Seventh Circuit affirmed the district court's holding that the decedent was not a foreseeable victim of a man with mental illness which the government released from confinement. *Id.* at 828. The plaintiff's risk was "shared by the thousands of others who lived in that section of town as well as those living in any community accessible to [the man] by foot, and perhaps even by public transit." *Id.* Such a generalized, "amorphous zone of danger is insufficient

13

to trigger a state duty to protect." *Id.*; *see also Martinez v. State of California*, 444 U.S. 277, 285 (1980) ("Dangers to the public at large are insufficient for constitutional purposes."). Similarly, the danger was not of a limited duration—the offender's propensity for crime "existed without temporal boundaries." *Buchanan-Moore*, 570 F.3d at 829.

Plaintiff, however, has pleaded facts that show that Price was at least a foreseeable victim of the harm that occurred to him—the HPD revealed his home address and status as a cooperator specifically to people who had already shot at him and threatened him with their guns. Price's risk was not because of some "amorphous zone of danger" shared by all in his vicinity. *Id.* at 828. It was specific to him personally. And the risk to Price was neither attenuated nor generalized, as the fate he suffered was exactly what the offenders had threatened. And though it is true that the offenders in this case murdered Price two weeks after the HPD's actions, this is sufficiently immediate, in light of the other circumstances of the case, to survive a motion to dismiss. *Compare Fields*, 2022 WL 971529, at *11 (three-month gap from witness's testimony at trial to her eventual murder was too long and indefinite to satisfy proximate causation).

### C. Shocks the Conscience

Finally, to be held liable under the state-created danger doctrine, the government's actions must shock the conscience. "Making a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Jackson v. Indian Prairie Sch.*

*Dist. 204*, 653 F.3d 647, 654-55 (7th Cir. 2011) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Rather, "[i]t requires a culpable state of mind equivalent to deliberate indifference." *Est. of Her*, 939 F.3d at 876 (citing *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007)). Like many of the issues raised by the City, the analysis of whether the government's conduct shocks the conscience is highly fact dependent and generally inappropriate for a motion to dismiss. *King*, 496 F.3d at 818.

The City argues that the conduct at issue in this case "falls far short of that standard" because a show up is a widely accepted police practice. But, as already explained, the cases cited by the City do not actually support its argument that the procedure the HPD employed in investigating Price's complaints is generally accepted. They only establish that driving a criminal suspect to a show up does not violate a suspect's Fourth Amendment rights in certain circumstances. *See Lippert*, 89 Ill. 2d at 188; *Ramos*, 339 Ill. App. 3d at 897.

Further, Plaintiff alleges that "[b]ringing violent offenders to a victim's home for identification is a gross departure from generally accepted policing practices and evinces a deliberate indifference to the victim's safety." R. 1-2 ¶ 15. It is at least conceivable that the HPD acted with deliberate indifference, rather than mere negligence, toward Price's safety, and this is enough to reach the level of conscience-shocking behavior. Thus, Plaintiff has adequately pleaded a state-created danger claim under the Due Process Clause against the City.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss (R. 11) is denied.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: January 6, 2023